**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE COX, MILES EDWARDS, A MINOR, JAXDEN EDWARDS, A MINOR, AND KYDEN COX, A MINOR, BY THEIR GUARDIAN AD LITEM, NICOLE COX AS ADMINISTRATOR OF THE ESTATE OF STEVEN MILES, DECEDENT,<br><br>Plaintiffs,<br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>Defendant. | 1: 13 - CV - 00104  AWI JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>[Document #5] |

**BACKGROUND**

On November 8, 2012, Plaintiffs' Nicole Cox, Jaxden Edwards, and Kyden Cox (collectively "Plaintiffs") filed complaint for damages in the California Superior Court against Defendant Reliance Standard Life Insurance Company ("Defendant").   Plaintiffs contend that Decedent Steven Mile Edwards ("Decedent") registered to obtain insurance products from Defendant, but Defendant did not make all required payments upon Decedent's death.   Plaintiff filed a complaint in the California Superior Court raising a breach of contract claim and a breach of the duty of good faith and fair dealing claim.   Defendants removed the action to this Court, contending that the complaint's state law claims are barred by the Employee Retirement Income

Security Act ("ERISA").

On January 23, 2013, Defendant filed a motion to dismiss Plaintiffs' breach of contract claim and the breach the duty of good faith and fair dealing claim pursuant to ERISA preclusion. Plaintiffs have not opposed Defendant's motion to dismiss.

**LEGAL STANDARD**

A complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A court must take a complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Id.* A party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *Parks School Of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In making a 12(b)(6) determination, district courts have followed a two-step approach. *Bell Atlantic v. Twombly*, 550 U.S. 544, 564-570 (2009). First, district courts should carefully examine the complaint to smoke out any "merely legal conclusions resting on the prior allegations." *Id*. at 564. If an allegation is deemed "conclusory," it is entitled to no weight in the 12(b)(6) calculus. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1951 (2009). Second, district courts should weigh the remaining facts and determine if they are sufficient to "nudge the claims across the line from conceivable to plausible." *Bell Atlantic,* 550 U.S. at 570. While a complaint "need not contain detailed factual allegations, it must plead enough facts to state a claim of relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Plausibility can be met even if a judge disbelieves a complaint's factual allegations. *Aschroft*, 129 S. Ct. at 1959 (stating that "no matter how skeptical the court may be . . . 'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'"). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 1940. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.* at 1949.   A Rule 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint. *Scheuer v. Rhodes*, 414 U.S. 544, 555, (2007).

## ALLEGED FACTS

The complaint alleges that Steven Miles Edward ("Decedent") was an employee of LKQ Corporation ("LKQ" or "Employer").   Decedent was eligible to apply for life insurance coverage under Group Policy No. GL 144260 ("Group Policy") with Defendant. *See* Complaint, 5-2, 3: 23-27.  Under the terms of the policy, Decedent was an eligible employee who could enroll for life insurance with Defendant, but was required to complete a ninety (90) day waiting period prior to applying for the insurance. *See* Complaint, 5-2, 2:27-28.  Decedent completed his life insurance enrollment form for the Group Policy on February 18, 2011, electing supplemental life insurance in the total sum of $310,000.00. *See* Complaint, 5-2, 3: 2-5.   Decedent paid all premiums due and payable for the insurance. *See* Complaint, 5-2, 3: 5-6.  Nicole Cox, Miles Edwards, a minor, Jackson Edwards, a minor, and Kyden Cox, a minor, were the named beneficiaries of the life insurance policy ("Plaintiffs"). *See* Complaint, 5-2, 3: 6-8.

The complaint alleges that under the terms of the life insurance policy, Decedent could elect supplemental coverage up to an amount of $200,000.00 without providing proof of good health; however, for the excess coverage of $110,000.00, proof of good health was required in some cases prior to the excess coverage becoming effective. *See*  Complaint, 5-2, 3: 9-14.

On October 11, 2011, Decedent sustained fatal injuries in a motor vehicle collision and passed away. *See* Complaint, 5-2, 3: 16-18.  After Decedent's death, Plaintiffs, who were the named beneficiaries of the insurance policy, filed a claim with Defendant for the amount of $310,000.00. *See*  Complaint, 5-2, 3: 20-24.   The complaint alleges that Defendant only paid Plaintiffs $200,000.00 and refused to pay Plaintiffs the remaining $110,000.00 because Decedent

did not provide proof of good health as allegedly required by the terms of the policy. *See* Complaint, 5-2, 3: 25-28.

Plaintiffs allege that Decedent was not required to provide proof of good health for the additional benefit because Decedent applied for the supplemental life insurance within the thirty-one (31) day period as stated in the Group Policy. As quoted in the complaint, the Group Policy provides in pertinent part:

> "If you pay the entire premium, the insurance for an eligible person will go into effect on the date stated on the Schedule of Benefits. Xxx he/she will become insured on the date stated in the Schedule of Benefits, except that the insurance will go into effect:
> (2) On the date we approve any required proof of good health. We require proof of good health if a person applies:
> (a) *After thirty-one (31) days from the date he/she first becomes eligible*"

Complaint, 5-2, 4: 3-11 (italics added).

The complaint alleges that Decedent was eligible to enroll for life insurance on February 15, 2011, and that Decedent applied for supplemental life insurance on February 18, 2011, well within the thirty-one (31) day period from the date Decedent first became eligible. *See* Complaint, 5-2, 4: 13-18. Because Decedent applied within the thirty-one (31) day period, the complaint alleges Decedent was not required to provide evidence of good health for the supplemental life insurance. *See* Complaint, 5-2, 5: 2-4. The parties do not dispute that Decedent applied for the insurance coverage within the thirty-one (31) day period.[1]

The complaint alleges that "[D]ecedent has done all things necessary and required of him under the terms of said policy, and that Defendant, Reliance Standard Life Insurance Company is in breach of its contractual obligations."

//

---

[1] According to Plaintiffs' complaint, "Defendant admits in its letter dated June 28, 2012" that Decedent applied for supplemental insurance benefits within the thirty-one (31) day period. The letter states as follows: "[Defendant] does not dispute that [Decedent] applied for insurance benefits within 31 days of his 90 day waiting period and became eligible for coverage under [the Group Policy] on March 1, 2011." Complaint, 5-2, 4: 20-24.

4

**DISCUSSION**

***I. Whether the supplemental life insurance policy is subject to regulation under ERISA?***

The question of whether an employee benefit plan is an ERISA plan "is a question of fact, to be answered in light of all the surrounding circumstances from the point of view of a reasonable person." *Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118, 1120 (9th Cir. 1998); see also *Kane v. Connecticut General Life Insurance Co.,* 867 F.2d 492 (9th Cir. 1988).

An ERISA plan is:

> "[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (a) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident disability, death or unemployment..."

29 U.S.C. § 1002(1). A court must determine, from the surrounding circumstances, whether a reasonable person could have ascertained the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. See *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). The Eleventh Circuit examined the prerequisites laid out in ERISA and broke them into a five part test. The *Donovan* test has been adopted by every circuit court to address the issue. *Williams v. WCI Steel Co.*, 170 F.3d 598, 602 (6th Cir. 1999). Under this test, an employee benefit plan must be (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or employee organization, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, *death*,... benefits, (5) to participants or beneficiaries. *Winterrowd v. American General Annuity Insurance Co.*, 321 F.3d 933, 939 (9th Cir. 2003); *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1443 (9th Cir. 1995); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985); *Donovan*, 688 F.2d at 1373.

Even if an ERISA plan satisfies all of the *Donovan* factors, ERISA still does not apply if the policy falls under ERISA's "safe harbor" provision. The four safe harbor factors are:

> (1) No contributions are made by an employer or employee organization
> (2) Participation in the program is completely voluntary for employees or members

5

(3) The sole function of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer, and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*See* 29 C.F.R. § 2510.3-1(j) (An employee welfare plan may be deemed exempt from ERISA application if all four of the Department of Labor's "safe harbor" criteria are met.).

Here, the life insurance plan Decedent purchased is an ERISA plan because all five *Donovan* factors are met. First, the life insurance plan at issue is a "plan" that has been "established or maintained". While "[t]he purchase of insurance does not conclusively establish a plan, fund, or program, . . . the purchase is evidence of the *establishment* of a plan, fund, or program." *Donovan*, 688 F.2d at 1373 (italics added). The complaint alleges, and the parties do not dispute, that Decedent purchased a Group Policy offered by Defendant. Such a purchase is "substantial evidence that a plan, fund, or program has been established." *Id.* This fact alone can establish that a policy was an ERISA "plan" that has been "established and maintained" for ERISA purposes. The Ninth Circuit has noted, "[a]n employer can establish an ERISA plan rather easily. "Even if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." *Credit Managers Association v. Kennesaw Life & Accident Insurance Co.*, 809 F.2d 617, 625 (9th Cir. 1987). Thus, from the complaint's allegations, it appears there is a plan, fund, or program established by LKO.

The third, fourth, and fifth *Donovan* factors have been deemed "either self-explanatory or defined by statute." *Donovan,* 688 F.2d at 137. While LKO may have paid a portion of premiums for coverage under the plan, Decedent was responsible for paying all of his own

6

premiums under the supplemental coverage.[2]  It is also undisputed that the policy provided death benefits to Decedent and other LKQ employees.  The employees are the participants and beneficiaries of the life insurance policy offered by the employer.  Accordingly, all five *Donovan* factors have been met.

In addition, the complaint's allegations do not meet all four of 29 C.F.R. § 2510.3-1(j)'s "safe harbor" criteria.  First, participation in the supplemental life insurance program cannot be seen as completely voluntary.  Here, LKQ guaranteed that 33% of its eligible employees will elect the supplemental life coverage, and in fact, it did meet that level of participation.  See *Chamblin v. Reliance Standard Life Insurance Co.*, 168 F.Supp.2d 1168, 1171 (N.D. Cal. 2001) ("The plan was not completely voluntary because the employer guaranteed Reliance a minimum participation rate of 75% of the company's managers at the time of contracting for the policy, and the company met that level of participation.").

Second, LKQ and the supplemental coverage cannot be severed from the plan as a whole to defeat ERISA coverage.  As such, LKQ'a contribution to the basic life coverage plan applies to the supplemental life insurance plan as well.  See *Glass v. United Of Omaha Life Insurance Co.*, 33 F.3d 1341 (11th Cir. 1994) ("Since the supplemental coverage was provided at discount rates only to participants of the basic ERISA plan, the supplemental coverage is part and parcel of the whole group insurance plan.").  In other words, the supplemental life insurance is merely a component of the basic life coverage plan.  As such LKO's premium payments toward basic life coverage are a "contribution made by an employer or employee organization." See Complaint, 5-2, 12: 9-15 ("Plaintiffs allege that under the terms of said group life insurance policy the decedent as an eligible Class 3 employee defined as such in said policy, could elect supplemental coverage.").

It is possible Plaintiffs will contend that the supplemental coverage should be viewed as a

---

[2] This fact is stated in Defendant's Motion to Dismiss, and Plaintiffs do not dispute it. *See* Defendants' Motion to Dismiss, Doc. 5, 12: 3-4.

7

different "plan" for ERISA because LKO made no contribution to this supplemental coverage option.  In Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), the Supreme Court addressed the situation of multi-benefit package plans, which contain both an ERISA Plan and a plan not covered by ERISA.   In Shaw, the Supreme Court found that a disability plan that was supplemental to a general ERISA plan could not be considered outside ERISA, even though it was created to comply with state law unless the second plan was "separately administered."  Id. at 107.  The Supreme Court reasoned that to apply state regulations to one portion of a multi-benefit plan, while subjecting other portions to federal regulations, would be inefficient and result in "administrative impracticality".  Id. at 107-08.   Since Shaw, several courts have determined whether ERISA applied to an employer's multi-benefit plans when only some of specific plans were governed by ERISA.

In general, the Ninth Circuit has held that courts should look at an employer's benefit program as a whole to determine if a plan is covered by ERISA.  In *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir. 1995), the Ninth Circuit considered whether a particular benefit policy, which only one partner used, was covered by ERISA.   If this policy was the only one the employer operated, it would have been exempt under ERISA.   However, the Ninth Circuit found that the features of one component of the plan are "not determinative," concluding that "the [partner's] policy was just one component of [the employer's] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan."  *Peterson*, 48 F.3d at 407; see also *Taylor ex rel. Estate of Thomson v. Zurich American Ins. Co.*, 2012 WL 5031738 (D.Ariz. 2012).

Several other circuits have specifically held that particular components of an employee benefit plan cannot be "severed" for purposes of determining whether the plan meets the safe harbor requirements.  For example, in *Gaylor v. John Hancock Mutual Life Ins. Co.*, 112 F.3d 460 (10th Cir. 1997), the Tenth Circuit considered a plan where the plaintiff purchased optional disability coverage without any contribution from her employer, but the employer contributed to

8

another plan for accidental death and dismemberment.    The Tenth Circuit evaluated the "employee welfare benefit plan" as a whole. The Tenth Circuit held that,

> For purposes of satisfying the safe harbor provision, [the plaintiff] attempts to sever her optional disability coverage from the rest of the benefits she received through her employer's plan. This cannot be done because the [optional] coverage was a feature of the Plan, notwithstanding the fact the cost of such coverage had to be contributed by the employee.

*Gaylor*, 112 F.3d at 463.   The Seventh Circuit adopted a similar approach in *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) ("For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not to be unbundled.").

In making a similar finding, the Sixth Circuit relied on provisions of the Health Insurance Portability and Accountability Act ("HIPAA").  See *Loren v. Blue Cross & Blue Shield of Mich.*, *505 F.3d 598* (6th Cir. 2007).  HIPPA's default rule is that all medical benefits offered by an employer are generally considered to be part of one ERISA health plan because an employer can create multiple plans by filing multiple plan documents.  Based on this rule, the Sixth Circuit found a strong presumption that the filing of only one ERISA plan document indicated that the employer intended to create only one ERISA plan.  *Id*. at  606.   In *Loren* there was no genuine issue of material fact on whether the employer created separate plans.  *Id.* at 605-606.

Similarly, in *Boos v. AT&T, Inc*. 643 F.3d 127, 132 (5th Cir. 2011), the Eleventh Circuit looked to the fact both in-region and out of region benefits used the same plan documents, referred to them as a single policy, offered the same benefits to both groups, both in-region and out of region benefits were drawn from defendant's general funds, the form did not change when changing between policies, and no employee or retiree could qualify for both an in-region discount and an out of region reimbursement; No retirees qualified for both benefit plans.   Even though the out of region plan was administered separately from that of in-region retirees, the court found that there is no genuine issue of material fact that defendant created a single plan as it relates to all retirees. *Id.* at 132.

However, in Chiles v. Ceridian Corp., 95 F.3d 1505 (10th Cir. 1996) the Tenth Circuit

9

concluded that there were separate plans.  The Tenth Circuit looked to the fact that each plan had a different ERISA identification number, the plans did not share the same trust or trust administer, and it was clear from the plans' language that the company intended to establish four different plans.  *Id.* at 1511.

Courts within the Ninth Circuit have applied these general principles when ruling on whether multiple plans offered by the same employer all fall within ERISA.  In *du Mortier v. Massachusetts General Life Ins. Co.*, 805 F.Supp. 816, 819 (C.D.Cal. 1992), the court was faced with several plan, some of which were covered by ERISA.  In holding that some portions were governed by ERISA but there were also Non-ERISA portions, the court found that the Non-ERISA portions were not administered as a single unit and were offered by an entirely different insurer than the general plan (which contained the ERISA portion).  Id. at 819.  In *Fisher v. Prudential Ins. Co. of America*, 842 F.Supp. 397 (N.D.Cal. 1993), the court found that all portions of a multibenefit plan, which consisted of three life and disability insurance programs, fell under ERISA because all parts were backed by a single trust and all had a single Trustee single insurer.  *Id.* at 401; see also *Alloco v. Met. Life Ins. Co.,* 256 F.Supp.2d 1023 (D. Ariz. 2003).[3]

Taking the complaint's allegations as true, along with those facts of which this Court can take judicial notice,[4] the allegations indicate that Defendant established a policy for certain death benefits and then allowed employers to add additional life benefits, all of which are covered by ERISA.  There are no facts showing that Defendant used different ERISA identification

---

[3] The Court notes that at least one District Court has found an insurance policy is not part of an ERISA plan even though the policy was part of a multi-benefit plan in which one or more of the components constituted an ERISA plan.  See Prudential Ins. Co. v. Thomason, 865 F.Supp. 762, 766 (D.Utah 1994) (holding a plan admitted by the parties to not be "covered by ERISA somehow sneaks under the ERISA umbrella by virtue of other plans administered by the same entity.")

[4] While Defendant state in their filings that it has attached a copy of the benefit plan at issue as Exhibit A, the Exhibits attached to Defendant's documents include only the notice of removal and complaint.

numbers, no documents indicate that the employer intended to establish multiple plans, and no allegations that the plans did not share the same administrator or trust. At this stage in the proceedings, it is plausible that the basic life coverage and the supplemental life coverage are considered ERISA plans.

***II. Whether Plaintiffs' first and second claims (Breach of Contract and Breach of a Duty of Good Faith and Fair Dealing) are preempted by ERISA?***

Plaintiffs' complaint states claims for breach of contract and the breach of the duty of good faith and fair dealing under California law. These state law claims are based on Defendant's failure and refusal to pay Plaintiffs the supplemental policy benefits of $110,000.000. Plaintiffs also seek punitive damages. Defendants request that the Court dismiss both of Plaintiffs' first and second State law claims and the punitive damage request on the ground that they are preempted by ERISA. *See* Complaint, Doc. 5-2.

ERISA contains a preemption provision stating that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. §1144(a) (italics added). A state law "relates to" an employee benefit plan if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983). It is irrelevant whether the law is aimed at employee benefit plans, or whether it is a law of general applicability. See *Shaw*, 43, U.S. at 98. Rather, "relate to" should be read in a broad sense. *Id.*; see also *Hyder v. Kemper National Services, Inc.*, 390 F.Supp.2d 915, 918 (N.D. Cal. 2005) ("Extensive case law establishes that the scope of ERISA preemption is extremely broad."); *Anderson v. Continental Casualty Co.*, 258 F.Supp.2d 1137 (E.D. Cal. 2003). "ERISA contains one of the broadest preemption clauses ever enacted by Congress." *Greany v. W Farm Bureau Life Insurance Co.*, 973 F.2d 812, 817 (9th Cir. 1992).

The United States Supreme Court has explained that the purpose of ERISA is "to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plans' regulation

11

would be exclusively a federal concern." See 29 U.S.C. § 1144; see also *Hyder*, 390 F.Supp.2d at 918. ERISA's integrated enforcement mechanism is essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. *Hyder*, 390 F.Supp.2d at 918. "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). "In particular, ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism." *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1130 (9th Cir. 1992).

ERISA's civil action enforcement provision allows a cause of action for benefits due under the terms of an employee benefit plan. See 29 U.S.C. § 1132(a)(3). "The civil enforcement provisions of ERISA § 502(a) [are] the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits. . ." *Pilot Life Insurance Co.*, 481 U.S. at 52; see also *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 231 (9th Cir. 1994) ("The overriding purpose of ERISA is to provide relief to beneficiaries with legitimate claims."). ERISA preempts suits based on state law that are predicated on administrative decisions and suits that allege the denial of benefits involving administrative decisions. See *Bui v. AT&T*, 310 F.3d 1143, 1147 (9th Cir. 2002) ("ERISA precludes state law claims predicated on the denial of benefits."). Thus, claims that concern the denial of benefits are generally preempted by ERISA.

Although not specifically stated in their complaint, Plaintiffs appear to be bringing suit pursuant to ERISA § 502(a)(3). See 29 U.S.C. § 1132(a)(3) ("A civil action may be brought by a participant, beneficiary, or fiduciary. . . to obtain other appropriate equitable relief. . . to enforce the terms of the plan."). "A plaintiff who brings a claim for benefits under ERISA must identify specific plan terms that confers the benefit in question." *Steelman v. Prudential Insurance Co. of*

*America*, 2007 WL 1080656, *7 (E.D. Cal. 2007) (citing *Stewart v. National Education Association*, 404 F.Supp.2d 122, 131 (D.C. 2005)). A court may dismiss an action if the plaintiff is not entitled to the benefit the plaintiff seeks to redress under an ERISA regulated plan. *Id.*

Here, Defendant argues that Plaintiffs' claims are preempted by section 502(a) of ERISA. See 29 U.S.C. § 1132(a)(1)(b). In support of its argument, Defendant cites to *Aetna Health v. Davila*, 542 U.S. 200 (2004). In *Aetna*, the Supreme Court held that a suit brought "only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and . . . not [to] attempt to remedy any violation of a legal duty independent of ERISA" is clearly within the scope of Section 502(a) and therefore is preempted. *Id.* at 214. According to the Complaint, Plaintiffs allege that Defendant wrongfully denied Plaintiffs a $110,000.00 payment under Decedent's supplemental life insurance plan. Based on the facts currently alleged in the complaint and Defendants' motions' contentions, Defendant has shown that Section 502(a) preemption applies. As such, Plaintiffs' claims for breach of contract and breach of good faith and fair dealing are preempted because they involve the alleged wrongful denial of benefits. See *Hyder*, 390 F.Supp.2d 915, 917-18 (granting defendant's motion to dismiss because plaintiff's state law claims for breach of duty of good faith and fair dealing and breach of contract arising from the denial of ERISA benefits were "completely preempted"); see also *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992) (holding plaintiff's causes of action for breach of contract and breach of a duty of good faith and fair dealing were preempted by ERISA); *Kanne*, 867 F.2d 489, 494 (9th Cir. 1988) (holding that plaintiff's common law claims for breach of contract and breach of the duty of good faith and fair dealing were preempted by ERISA);

Based on the foregoing, Defendant's motion to dismiss the first and second causes of action is granted. The complaint will be dismissed with leave to file a new complaint under ERISA.

13

### III. Whether Plaintiffs' request for punitive damages is preempted by ERISA?

Plaintiffs seek punitive damages for Defendant's alleged breach of its duty of good faith and fair dealing when Defendant failed and refused to pay the excess insurance benefits. *See* Complaint, Doc. 5-2, 18: 22-23.

As stated earlier, Plaintiffs' claim for benefits may be brought under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which grants relief "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." Based on the plain language of this statute, no relief is granted in the form of extra contractual damages. According to the statute, the only relief to which Plaintiffs are entitled is to "recover benefits" and to "enforce . . . rights under the plan." 29 U.S.C. § 1132(a)(1)(B).

Generally speaking, state law claims falling within the scope of ERISA Section 502(a) are completely preempted even if ERISA does not provide a remedy for all contentions raised in the in the state law complaint. *Pilot Life Insurance Co.*, 481 U.S. 41 (1987). The Supreme Court has held that neither punitive nor emotional distress damages can be recovered in an ERISA Section 502(a) action for benefits. *Pilot Life Insurance* Co., 481 U.S. at 41; see also *Masschusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 132, 148 (1985) (beneficiary could not recover extra-contractual damages, either compensatory or punitive, under section 409(a) of ERISA against a fiduciary for improper processing of benefit claims); *Metropolitan Life Insurance Co.*, 481 U.S. 58 (holding punitive damages not available under ERISA). The Supreme Court has emphasized the policy rational behind ERISA and stated that "the policy choices reflected in the inclusion of certain remedies and the exclusion of other remedies would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress had rejected in ERISA." *Metropolitan Life Insurance*

*Co.*, 481 U.S. 58, see also *Massachusetts Mutual life Insurance Co.*, 473 U.S. at 138[5] (holding congressional intent shows there was no desire to imply a cause of action for extra relief, and none was expressly provided). "[T]he six carefully integrated civil enforcement provisions in Section 502(a) of the statute as finally enacted. . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. *Id.* at 146.

The Ninth Circuit also adopts this same line of reasoning regarding extra-contractual damages under ERISA. The Ninth Circuit found in *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir. 1986), that "there is considerable support in *Massachusetts Mutual Life Insurance Co.* that no provision in ERISA authorizes the award of extra-contractual damages." See *Sokol*, 803 F.2d at 535. According to the Ninth Circuit, remedies under ERISA are limited to those specified in ERISA and traditional equitable remedies, such as benefit payment, restitution, constructive trust, and injunctive relief. See *Landwehr v. DuPree*, 72 F.3d 726, 735 (9th Cir. 1995). In other words, Plaintiffs may not recover either compensatory or punitive damages pursuant to the complaint's alleged facts.

Pursuant to the complaint, Plaintiffs seek punitive damages. As as this court has found that Plaintiffs' claims are under ERISA, Plaintiffs are precluded from seeking extra-contractual damages. Therefore, this Court grants Defendant's motion to dismiss as to Plaintiffs' request for punitive damages.

//
//
//

//

---

[5] The Supreme Court in *Massachusetts Mutual Life Insurance Co.* explicitly reserved the question of whether any provision other than § 409(a) authorized recovery of extra-contractual damages. *Massachusetts Mutual Life Insurance Co.*, 473 U.S. at 139 (see note 5).

15

**CONCLUSION AND ORDER**

Based on the foregoing, the Court ORDERS:

1. Defendant's motion to dismiss Plaintiffs' first and second causes of action, along with Plaintiff's punitive damage request, is GRANTED;
2. The complaint is DISMISSED with leave to amend; and
3. Any amended complaint shall be filed within thirty (30) days of this order's date of service.

IT IS SO ORDERED.

Dated:  May 16, 2013

SENIOR DISTRICT JUDGE